UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DAVID JEAN-LOUIS,

                    Plaintiff,

          -against-

BLUETRITON BRANDS, INC. d/b/a
BLUETRITON BRANDS; ANDY
EDWARDS, in his official and individual
capacity as Unit Leader; MARK
BERNARD, in his official and individual
capacity as Branch Manager,

                    Defendants.

------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24-CV-5960 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff David Jean-Louis ("Plaintiff") brings this action against Defendants

alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and

the New York Labor Law ("NYLL"), §§ 190 *et seq.* and 650 *et seq. See generally* Compl.,

ECF 1; Am. Compl., ECF 16. Plaintiff primarily alleges that he was not properly

compensated for overtime work and that he was terminated in retaliation for his

complaints about his compensation, in violation of the FLSA and NYLL. Am. Compl.,

ECF 16, ¶¶ 1–4. Defendants have filed a motion to dismiss, which the Honorable Diane

Gujarati referred to the undersigned Magistrate Judge for a report and

recommendation. Notice of Mot. to Dismiss, ECF 23; Aug. 22, 2025 ECF Referral Order.

For the reasons set forth below, the Court respectfully recommends that Defendants'

motion to dismiss be granted in part and denied in part. In addition, the Court

respectfully recommends granting Plaintiff's request to file an amended complaint.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

According to the complaint, Defendant BlueTriton Brands, Inc. ("Corporate Defendant," the "Company," or "BlueTriton") is a water manufacturing, bottling, and distribution company incorporated in Delaware that maintains an office and warehouse in Long Island City, New York. Am. Compl., ECF 16, ¶ 11. Plaintiff states that he worked as a "route sales representative" ("RSR") for the Company, and that his duties as an RSR "consisted of delivering water products stored at the Long Island City warehouse to customers located in Brooklyn, Manhattan, and Queens." *Id.* ¶¶ 10, 15. Plaintiff alleges that he worked at BlueTriton from September 2019 until November 14, 2023, when he was fired. *Id.* ¶¶ 10, 14, 63. Defendant Andy Edwards became Plaintiff's supervisor (or "Unit Leader") in or about November 2022, after which Plaintiff reported directly to Defendant Edwards, and Defendant Mark Bernard worked as the Branch Manager, "exercising supervisory authority over those working at the Long Island City warehouse." *Id.* ¶¶ 16–17. Plaintiff further asserts that both Defendants Edwards and Bernard "were responsible for hiring and firing employees, setting compensation, delegating assignments to [Plaintiff], and maintaining employee records and other business records." *Id.* ¶ 18. Plaintiff asserts that "[h]e had no managerial or supervisory duties and performed exclusively non-exempt duties." *Id.* ¶ 15

---

[1] For purposes of a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 379–80 (2d Cir. 2021) (quotation marks and alterations omitted). The facts alleged by Plaintiff in the amended complaint are assumed to be true for purposes of this motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010); *Jackson v. Nassau County.*, 552 F. Supp. 3d 350, 359 n.1 (E.D.N.Y. 2021).

Plaintiff alleges that his job responsibilities changed over time, and that, as a result, his hours changed, but that BlueTriton did not alter his compensation as a salaried employee. Specifically, Plaintiff alleges that in or about January 2023, the company "eliminated" a team of workers whose duties related to servicing the company's water coolers and tasked RSR delivery workers with these duties instead. *Id.* ¶ 20. These tasks included but were not limited to "changing filters, repairing broken handles and other parts, removing the cooler's rear casing and cleaning the interior of the machine, and sometimes even replacing the water coolers altogether." *Id.* ¶ 21. Notably, Plaintiff alleges that he "began doing this in addition to his regularly assigned water product deliveries as an RSR." *Id.* Around this time, some RSR delivery workers "were converted to a commission-based compensation structure," for taking on these duties, but Plaintiff was not among them. *Id.* ¶¶ 24–25, 27.

In January 2023, Defendant Edwards informed Plaintiff that he would be required to attend mandatory training to learn how to service the water coolers. *Id.* ¶ 22. In connection with these newly assigned water cooler servicing duties, Plaintiff inquired of Defendant Edwards as to whether he would be receiving additional compensation for this work, to which Defendant Edwards "responded in the affirmative." *Id.* ¶ 23. But unlike some of his colleagues who transitioned to a commission-based arrangement due to the new job duties, Plaintiff remained a "traditional salaried employee" and "did not receive additional compensation for these services." *Id.* ¶ 27.

With the new job duties, however, came more hours. The amended complaint alleges that the "additional servicing duties . . . necessitated Mr. Jean-Louis to work in excess of 40 hours per workweek performing not just his traditional RSR water delivery tasks, but also servicing the water coolers." *Id.* ¶ 28. Plaintiff claims that from January

3

2023 until his termination in November 2023, he worked "a *minimum* of at least 15 hours of overtime per week." *Id.* ¶ 29 (emphasis in original). Plaintiff further states that, prior to being assigned the water cooler servicing duties, he regularly began work at 5:30 a.m. to attend mandatory morning briefings, and worked until about 4:30 p.m. each day, Monday through Friday, "approximately a 10-hour workday." *Id.* ¶ 29(a)–(b). After the water cooler servicing responsibilities were added, Plaintiff estimates that "nearly every day, Monday through Friday, Mr. Jean-Louis worked until as late as 5:30 p.m. or 6:00 p.m. when he was permitted to leave the warehouse." *Id.* ¶ 29(c).

Plaintiff states that, in approximately March 2023, he "began to make complaints regarding his compensation to his Unit Leader, Mr. Andy Edwards." *Id.* ¶ 30. Plaintiff alleges that "[b]eginning in March 2023, and on numerous subsequent occasions thereafter, [Plaintiff] spoke directly to Mr. Edwards requesting that he be adequately and properly compensated for his services," and that "[n]early every time after [Plaintiff] raised his concerns with Mr. Edwards, Mr. Edwards rebuked [Plaintiff], and even explicitly threatened him with termination." *Id.* ¶¶ 33–34. Plaintiff was moved to act because, as the amended complaint asserts, "he was being assigned water cooler maintenance and servicing on a comparatively greater basis" than some of his colleagues who were paid for servicing the coolers on a commission basis. *Id.* ¶ 31. Plaintiff suspected that this was because he was paid on a salary basis and "did not receive any additional compensation for each water cooler serviced" and he "was not compensated for the hours worked in excess of the traditional 40-hour workweek." *Id.* ¶ 32.

Plaintiff further alleges that Defendant Edwards frequently threatened him with termination if he were to fail to service the water coolers, and that those threats "were ongoing in nature and specifically began following [Plaintiff's] making complaints

regarding proper compensation." *Id.* ¶ 36; *see also id.* ¶¶ 34–35. Plaintiff also claims that Defendant Edwards engaged in other adversarial conduct towards him, such as singling him out in front of other employees for not fully completing his deliveries and commenting on his attire, even when he was dressed similarly to his colleagues. *Id.* ¶¶ 37–38. In addition, Plaintiff's suspicions that he was being given more water cooler servicing duties than his colleagues continued to grow, "given that Mr. Jean-Louis' salary was unaffected by the number of water coolers serviced and/or the amount of time worked." *Id.* ¶ 41. Plaintiff avers that, in late June 2023, he began to explicitly ask Defendant Edwards to assign the water cooler servicing duties only to those employees who were being paid for that work on a commission basis. *Id.* ¶ 43. Thereafter, on or about July 28, 2023, Defendant Edwards called Plaintiff into a "disciplinary meeting" for allegedly being caught using his company-issued device while operating a company vehicle via a camera in the vehicle. *Id.* ¶ 44. Plaintiff states that he was not provided any opportunity to respond to this claim, or any information on how to appeal or challenge the discipline imposed. *Id.* ¶ 45. Plaintiff further claims that this was the first disciplinary measure ever imposed on him in the nearly four years he worked for Defendants, and that Defendants failed to discipline other employees for similar, or even more severe, misconduct. *Id.* ¶¶ 46–47.

On October 4, 2023, when Plaintiff reported to work, he was assigned to service approximately 12 to 15 machines, which could take from 30 to 45 minutes per machine. *Id.* ¶ 48. Plaintiff objected by contacting Defendant Edwards and expressing "his unwillingness to complete these assignments after months of water cooler servicing without compensation." *Id.* ¶ 49. That same day, after a text message exchange, Defendant Edwards called Plaintiff and "began berating him, threatening him with termination, and demanding that he service the machines." *Id.* ¶ 50. Plaintiff then

contacted the Company's human resources business partner, Brooke Semenza, to inform her of "the issues he was having regarding compensation over the last few months, Mr. Edwards' threats, and the fact that his numerous earlier complaints to Company leadership had never been dealt with." *Id.* ¶ 51. At a meeting the next day, Ms. Semenza assured Plaintiff that she would address his concerns. *Id.* ¶ 52. On October 30, 2023, Plaintiff was called to a meeting with Defendants Bernard, Edwards, and another unit leader, where Defendant Bernard represented that the issue with Plaintiff's compensation would be "rectified," but that he would "not be receiving any retroactive commissions nor overtime wages." *Id.* ¶¶ 53, 54. The matter was not resolved, however, and Plaintiff continued to receive water cooler servicing assignments and "to work in excess of 40 hours per week without any additional compensation being provided for those additional hours." *Id.* ¶ 55. Finally, on November 13, 2023, Plaintiff was called into the office and shown another video that one of the unit leaders alleged showed Plaintiff on the phone while in his vehicle. *Id.* ¶ 56. The next day, Defendant Edwards informed Plaintiff he was being terminated on the basis of the phone use accusations that were presented the day before. *Id.* ¶ 57.

Based on these allegations, Plaintiff asserts the following claims: violations of the overtime pay provisions of the FLSA and NYLL (claims one and three), a violation of the NYLL's spread of hours provision (claim four), and retaliation in violation of the FLSA and the NYLL (claims two and five). *Id.* ¶¶ 61–81. Defendants have moved to dismiss the amended complaint in its entirety, arguing that Plaintiff's claims fail to state any of the asserted causes of action and that Plaintiff has not alleged sufficient facts from which to infer that the Individual Defendants are employers for purposes of the FLSA and NYLL. *See generally* Defs. Mem., ECF 25.

For the reasons set forth below, the Court respectfully recommends that Defendants' motion to dismiss be denied in part and granted in part as follows: the motion to dismiss should be denied as to Plaintiff's overtime and retaliation claims but granted as to Plaintiff's spread-of-hours claim under the NYLL; and the Individual Defendants' motion to dismiss for failing to state that they are employers under the FLSA and NYLL should be denied as to Defendant Edwards but granted as to Defendant Bernard. Finally, the Court recommends that Plaintiff's request to file an amended complaint be granted.

## DISCUSSION

### I.  Legal Standard: Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires establishing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations" (quotation marks omitted)); *Jackson v. Nassau County*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555 (internal quotation

7

marks omitted))). At the motion to dismiss stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). When deciding a motion to dismiss, the court does not "weigh the evidence that might be presented at trial but merely . . . determine[s] whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012); *see Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## II.  FLSA & NYLL Overtime Claims

### A.  Legal Standard

To establish liability under the FLSA, a plaintiff must demonstrate that (1) the defendant is an "employer" subject to the FLSA; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 366 (E.D.N.Y. 2022); *see also* 29 U.S.C. §§ 206(a), 207(a), 213. To recover under the NYLL, a plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (alteration in original) (quotation marks omitted) (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2); *see also Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *rev'd on other grounds*, 811 F.3d 528 (2d Cir. 2016); *see Ethelberth*, 91 F. Supp. 3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's). Accordingly, courts in the Second Circuit generally analyze FLSA and NYLL claims using the same standards, because of the "substantial similarity in the provisions." *Ethelberth*, 91 F. Supp. 3d at 360.

8

1. *Employers Subject to the FLSA & the NYLL*

An employer is subject to the overtime wage provision of the FLSA if either: (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. § 207(a)(1); *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). A defendant must engage in commerce or the production of goods in interstate commerce and have annual sales greater than $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(i)–(ii). In turn, under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]" (alterations in original) (quotation marks omitted)).

In this case, Defendants do not contest that Plaintiff has adequately alleged he was an employee and that BlueTriton was an employer covered by the FLSA and the NYLL. *See generally* Defs. Mem., ECF 25. Defendants do, however, argue that the Individual Defendants are not "employers" within the meaning of the FLSA. *See* Defs. Mem., ECF 25, at 15–18. With respect to individual defendant liability, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-0451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016) (citation omitted), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated by stipulation on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23,

9

2018). The definition of "employer" under the FLSA has been consistently applied coextensively with the definition of "employer" under the NYLL. NYLL §§ 190(3) & 651(6); *see also Ethelberth*, 91 F. Supp. 3d at 360.

Framed another way, under the FLSA and NYLL, a plaintiff who sues a corporate employer may assert claims against individuals affiliated with the corporate employer (by employment or ownership) if those individuals possess sufficient authority or control in the corporation to be deemed the plaintiff's "employer" under the law. *See Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *7 (E.D.N.Y. Jan. 31, 2018), *report and recommendation adopted as modified on other grounds*, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). The Second Circuit has set out a four-factor test to evaluate a plaintiff's claim as to formal control by an individual employer that includes: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotation marks omitted). And "[e]ven without meeting all of the *Carter* factors, individual officers or owners of a corporation can be jointly and severally liable under the FLSA if their role 'directly affect[s] the nature or conditions of the employees' employment.'" *Jian Ping Lin v. Monda Window & Door Sys., Inc.*, No. 17-CV-3737 (MKB) (RER), 2018 WL 4403384, at *4 (E.D.N.Y. Aug. 7, 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013)), *report and recommendation adopted*, 2018 WL 4388450 (E.D.N.Y. Sept. 14, 2018).

2. *FLSA Exemptions*

Certain employment relationships are exempt from the overtime pay provisions of the FLSA. *See* 29 U.S.C. § 213(b) (setting forth the relevant exemptions). In this case,

Defendants posit that Plaintiff was a salaried employee who was exempt under the FLSA under the Motor Carrier Act ("MCA") exemption. *See* Defs. Mem., ECF 25, at 7–8; Reply, ECF 27, at 1 (stating that "BlueTriton properly classified [Plaintiff] as exempt (specifically, exempt pursuant to the motor carrier exemption § 13(b)(1) of the FLSA"); *see id.* at 1–2 (noting that an employee can be classified as exempt pursuant to various exemptions, such as the outside sales, computer professional, and MCA exemptions, and arguing that "Plaintiff has not plead[ed] any facts which, if true, could establish that he was a non-exempt employee eligible for overtime pay").

In evaluating the applicability of an exemption, the "name given to the employee's position is not controlling; rather, it is the character of the activities involved in the employee's performance of his job that controls." *Walden v. Sanitation Salvage Corp.*, Nos. 14-CV-0112 (ER) & 14-CV-7759 (ER), 2016 WL 7243547, at *2 (S.D.N.Y. Dec. 13, 2016). In this case, Defendants repeatedly assert that Plaintiff is exempt from receiving overtime because he was a salaried employee, who, according to Defendants, was properly classified as exempt under the MCA exemption. Defs. Mem., ECF 25, at 2, 7; Reply, ECF 27, at 1.

The MCA exemption to the FLSA states that "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49" does not retain FLSA protection for overtime pay. 29 U.S.C. § 213(b)(1). Under the MCA, the Secretary of Transportation has jurisdiction over the "qualifications and maximum hours" for employees of a "motor carrier" and "motor private carrier." 49 U.S.C. § 31502(b). "Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and the employee's activities." *Walden*, 2016 WL 7243547, at *2 (citing 29 C.F.R. § 782.2(a)). As a general rule, "[t]he employee must be a

11

'driver, driver's helper, loader, or mechanic' whose work directly affects the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA." *Id.* (quoting 29 C.F.R. § 782.2(b)(2)); *see also Tang v. Wing Keung Enters., Inc.*, No. 14-CV-0390 (JBW) (LB), 2016 WL 6110454, at *4–5 (E.D.N.Y. July 11, 2016), *report and recommendation adopted*, 210 F. Supp. 3d 376 (E.D.N.Y. 2016). Importantly, "[t]he application of an exemption to the FLSA is an affirmative defense that may only form the basis for a Rule 12(b)(6) dismissal if it 'appears on the face of the complaint.'" *Coker v. Goldberg & Assocs.*, No. 21-CV-1803 (ER), 2022 WL 874719, at *2 (S.D.N.Y. Mar. 24, 2022) (quoting *Gomez v. Dynaserv Indus., Inc.*, No. 15-CV-3452 (SJ) (PK), 2016 WL 6072371, at *1 (E.D.N.Y. Oct. 17, 2016) (internal quotation marks omitted)).

Moreover, the Second Circuit has clearly and unambiguously held that a "plaintiff is not required to plead the absence of such a defense." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015). Rather, the burden of invoking an FLSA exemption rests with the employer. *Id.* (observing that, "[b]ecause the FLSA is a remedial law, exemptions 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit'" (quoting *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 (2d Cir. 2009) (internal quotation marks omitted))); *see also Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).

## B. Analysis

Defendants make two core arguments in support of their motion to dismiss Plaintiff's overtime claims. First, Defendants argue that Plaintiff is exempt from the FLSA's overtime pay provisions. Defs. Mem., ECF 25, at 6–8. Defendants also argue that

Plaintiff has failed to adequately allege facts to establish that he worked overtime hours for which he was not compensated. *Id.* at 8–9.

      1.   *Applicability of the MCA Exemption*

The parties disagree over whether any exemption applies to Plaintiff. Accordingly, Defendants' motion to dismiss Plaintiff's overtime wage claims turns on whether the allegations in the amended complaint, which the Court must credit as true at this stage in the case, establish as a matter of law that Plaintiff is statutorily exempt, or whether there are fact issues surrounding the scope of Plaintiff's duties that impact the determination of whether he is an exempt worker under the MCA. *See id.* at 6–8; Pl. Opp'n, ECF 26, at 6–8 (arguing that, even if paid a salary, Plaintiff was not an executive, administrative, or professional employee that would be exempt from overtime).[2]

Turning first to the question of whether Plaintiff was an exempt employee, the Court starts by observing that a determination regarding the applicability of the MCA "requires a detailed, fact-specific inquiry." *Romero v. Flaum Appetizing Corp.*, No. 07-CV-7222 (BSJ) (JCF), 2011 WL 812157, at *4 (S.D.N.Y. Mar. 1, 2011); *see also* 29 C.F.R. § 782.2(b)(3).[3] Indeed, "for the motor carrier exemption from the FLSA to apply,"

---

[2] The Court notes that there may be related issues surrounding how the MCA exemption impacts Plaintiff's NYLL wage deficiency claim. As to that claim, the Court notes that "although the NYLL's overtime-pay provision, 12 N.Y.C.R.R. § 142.2-2, adopts the Motor Carrier Exemption," such workers are entitled to overtime compensation of one and one-half times the state minimum wage. *Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575–76 (2d Cir. 2020) (per curiam). Here, the Court has no information regarding Plaintiff's rate of pay and cannot evaluate whether, even if properly classified as an exempt worker under the MCA for purposes of the FLSA, he may have an overtime claim under the NYLL under *Hayward*.

[3] 29 C.F.R. § 782.2(b)(3) states, in pertinent part, as follows:

Defendants must establish "either that the activities of the individual plaintiffs involved interstate travel of a character that was more than de minimis or that interstate travel was a 'natural, integral and . . . inseparable part' of the position plaintiffs held." *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 275 (S.D.N.Y. 2008) (quoting *Morris v. McComb*, 332 U.S. 422, 433 (1947)).

Of particular relevance here, "[w]here only a part of an employee's activities affect the safety of operations of motor vehicles in interstate commerce, courts consider 'the character of the activities rather than the proportion of either the employee's time or his activities' in determining whether the employee comes within the scope of the Secretary[ of Transportation]'s authority to regulate qualifications and maximum hours of service." *Id.* at 274 (quoting *McComb*, 332 U.S. at 431). In addition, because the applicability of the MCA "depends upon the activities of the individual employees, a defendant generally must present evidence as to the character of the activities of each plaintiff in order to determine whether he or she is subject to the exemption." *Id.* (quotation marks omitted).

Defendants' general assertions about Plaintiff's job responsibilities over time are insufficient to establish the applicability of the exemption. *See Perez v. Time Moving & Storage Inc.*, No. 08-CV-2775 (CM), 2008 WL 5662070, at *2 (S.D.N.Y. Jan. 15, 2008) ("[A]s

---

As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption *in all workweeks* when he is employed at such job.

(emphasis added).

long as the facts pleaded about their job duties render it plausible that plaintiffs fall outside the [motor carrier] exemption, the complaint cannot be dismissed[.]"). To prevail on their motion, not only would Defendants need to establish from the face of the complaint that the exemption applies as a matter of law, they would also need the pleading to establish that the exemption applied for the entirety of the time period that forms the basis for Plaintiff's claims. In *Chaohui Tang v. Wing Keung Enters., Inc.*, the Honorable Jack B. Weinstein had occasion to analyze the applicability of the MCA in a case where the employees had varied job responsibilities. *See* 210 F. Supp. 3d at 404. He concluded, in the context of a motion for summary judgment, that a "week-by-week approach" was to be used to determine whether a plaintiff falls under the MCA exemption for each workweek. *Id.* at 393–94, 404; *see* 29 C.F.R. § 782.2(b)(3) (discussing applicability of the exemption "*in all workweeks* when [an employee] is employed" in a qualifying job (emphasis added)). This kind of highly fact-intensive analysis does not generally lend itself to granting a motion to dismiss. *See Thompson v. Eldorado Coffee Roasters Ltd.*, 246 F. Supp. 3d 697, 702–03 (E.D.N.Y. 2017) (noting that applying the MCA exemption is "a case-specific and highly fact-intensive inquiry" and finding that the pleadings did not offer a factual basis to grant defendant's motion to dismiss pursuant to the MCA). Additionally, as noted above, "the employer bears the burden of demonstrating that an FLSA exemption applies." *Id.* at 704 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)).

Here, Plaintiff alleges in the complaint that his core job duties included delivering water products from Long Island City to Brooklyn, Queens, and Manhattan, and, after his responsibilities shifted, servicing water coolers. Am. Compl., ECF 16, ¶¶ 10, 15, 21. Without engaging in any analysis of Plaintiff's actual job responsibilities, Defendants simply state that Plaintiff was an exempt employee. *See* Defs. Mem., ECF 25,

15

at 7–8. Their conclusory assertion is entirely unpersuasive. Defendants' claim that Plaintiff fails to allege facts to show he was "misclassified" is an inappropriate effort to shift the burden of establishing the applicability of an exemption from Defendants to Plaintiff, an approach that the Second Circuit has squarely rejected. *See, e.g., id.* at 7; *see Chen*, 798 F.3d at 81 ("A plaintiff is not required to plead the absence of such a defense.").

Given that the Court must accept Plaintiff's allegations as true at this stage, the Court finds that Plaintiff has plausibly alleged facts sufficient to demonstrate that at least some of his work as a water products deliverer and water cooler servicer fell outside the MCA exemption, and there are insufficient facts in the complaint from which to conclude that any other FLSA exemption clearly applies as a matter of law. Accordingly, Defendants have not met their burden to establish that the exemption clearly applies. *See Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011) ("The employer who invokes the exemption bears the burden of establishing that the employee falls within the exemption."). Accordingly, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's overtime claims based on the applicability of an exemption to the overtime provisions of the FLSA and NYLL be denied.

   2.  *Allegations Regarding the Number of Hours Worked*

Turning next to question of whether Plaintiff has adequately alleged that he worked overtime hours, Defendants assert that, even though Plaintiff claims he worked at least 15 hours of overtime per week since January 2023, he also concedes that he worked more than 40 hours per week prior to that and that Plaintiff fails to allege his rate of pay or total compensation. Defs. Mem., ECF 25, at 8. In the absence of these factual allegations, Defendants aver that "it is unclear whether his salary may have

included compensation for the additional time he spent servicing the water coolers." *Id.* at 8.

There is a "'rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week.'" *Kim v. Kini LIC Corp.*, ___ F. Supp. 3d ___, No. 20-CV-6009 (NCM) (JAM), 2025 WL 2846799, at *16 (E.D.N.Y. Oct. 8, 2025) (quoting *Berrios v. Nicholas Zito Racing Stable Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012)). As a result, "'the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours.'" *Id.* (quoting *Berrios*, 849 F. Supp. 2d at 385).

Defendants are correct that the amended complaint here could be clearer as to Plaintiff's precise allegations concerning the number of alleged hours of overtime per week, what his salary was, and how many hours of overtime Plaintiff contends were not covered by his salary. But an adoption of Defendants' argument that this forms a basis for dismissal of the claim would improperly shift the burden to establish that Plaintiff's weekly salary covered overtime from Defendants to Plaintiff. "[A]n employer asserting that an employee's weekly salary includes FLSA-required overtime payments must prove not just that the employee regularly works over 40 hours per week, but also that the employer and employee contracted for the weekly salary to include the overtime period." *Giles v. City of New York*, 41 F. Supp. 2d 308, 318 (S.D.N.Y. 1999); *see also Berrios*, 849 F. Supp. 2d at 385. Additionally, in the pleadings, "Plaintiffs are also not required to specify their precise schedule or allege their rate of pay." *Pullman v. Collins*, No. 24-CV-1383 (KMK), 2025 WL 2673807, at *9 (S.D.N.Y. Sept. 18, 2025); *see also Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 112 (2d Cir. 2023) (holding that where plaintiffs "plausibly allege that they worked more than forty hours per week as part of their

17

regularly scheduled workweek, they have adequately stated a claim under the FLSA and need not list the specific workweeks during which they worked more than forty hours").

Notwithstanding some lack of specificity in the amended complaint, Plaintiff alleges specific facts in support of his assertion that he was required to work over 40 hours every week, that he worked a minimum of at least 15 hours of overtime per week from January 2023 through November 2023, and that his hours during this period of time were compensated at the same rate he was previously paid for fewer hours. Am. Compl., ECF 16, ¶¶ 29, 32. Crediting Plaintiff's allegations and drawing all reasonable inferences in Plaintiff's favor as the Court must at this stage, the Court finds that Plaintiff has adequately pleaded his overtime claims and recommends that Defendants' motion to dismiss be denied as to Plaintiff's overtime claims under both the FLSA and the NYLL.

### III. FLSA & NYLL Retaliation Claims

#### A. Legal Standard

The FLSA prohibits retaliation against people who assert rights protected by the act. *See* 29 U.S.C. § 215(a)(3) (making it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA). "This anti-retaliation provision enforces appropriate wage and hour standards under the FLSA by ensuring that 'fear of economic retaliation' does not 'operate to induce aggrieved employees quietly to accept substandard conditions.'" *Aflalo v. Cantor Fitzgerald, L.P.*, 298 F. Supp. 3d 688, 694 (S.D.N.Y. 2018) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). The NYLL's anti-retaliation provision is substantially similar, and "courts analyze both statutes under the same standards for

18

the purposes of a motion to dismiss." *Pullman*, 2025 WL 2673807, at *12 (quotation

marks omitted); *see also Abe v. Yamaguchi & Friends, Inc.*, No. 22-CV-3164 (NRM) (ARL),

2024 WL 3875779, at *10 (E.D.N.Y. Aug. 20, 2024) (quoting *Li v. Chinese Nail Salon Ass'n

of E. Am. Inc.*, No. 20-CV-6390 (KAM) (LB), 2024 WL 866248, at *3 (E.D.N.Y. Feb. 28,

2024)).

To establish a *prima facie* case of retaliation under the FLSA or NYLL,[4] a plaintiff

must show four elements: "(1) 'an adverse employment action'; (2) 'participation in a

protected activity'; (3) 'that the defendant knew of the protected activity'; and '(4) a

causal connection between the protected activity and the adverse employment action.'"

*Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Littlejohn*,

795 F.3d at 316 (internal quotation marks omitted)); *see also Williams v. Harry's Nurses

Registry, Inc.*, No. 24-34-cv, 2025 WL 842041, at *3 (2d Cir. Mar. 18, 2025) (summary

order) (observing that under the FLSA and NYLL, a plaintiff "'must first establish a

*prima facie* case of retaliation by showing (1) participation in protected activity known to

the defendant, like the filing of a FLSA lawsuit; (2) an employment action

disadvantaging the plaintiff; and (3) a causal connection between the protected activity

and the adverse employment action.'" (quoting *Mullins v. City of New York*, 626 F.3d 47,

53 (2d Cir. 2010)); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 326 (S.D.N.Y. 2016); *Carrasco v.*

---

[4] Although FLSA retaliation claims are evaluated "under the familiar 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 (S.D.N.Y. 2008), "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Accordingly, "the Court need only address the first stage of the *McDonnell Douglas* framework." *Pullman v. Collins*, No. 24-CV-1383 (KMK), 2025 WL 2673807, at *12 n.9 (S.D.N.Y. Sept. 18, 2025).

*Metro. Transit Auth.*, No. 24-CV-4265 (LGS), 2025 WL 1939052, at *5 (S.D.N.Y. July 15, 2025).

Participation in protected activity includes making informal written and oral complaints to employers about violations of the FLSA. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) ("[A] complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."); *see also Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 117 (2d Cir. 2015). An employment action disadvantaging a plaintiff is one that "could well dissuade a reasonable worker from engaging in protected activity." *Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-1971-cv, 2022 WL 17587564, at *2 (2d Cir. Dec. 13, 2022) (summary order) (quotation marks omitted). Finally, "[c]ausation in a retaliation claim can be shown either directly or through circumstantial evidence, usually when the adverse action followed soon after the protected activity." *Id.*

With respect to causation, the Second Circuit has also observed that:

[A] plaintiff must plausibly plead a connection between the act and his engagement in protected activity. *See* 42 U.S.C. § 2000e–3(a). A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation marks omitted)).

. . . .

Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be "because" a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action. . . . "'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Further, "the but-for causation standard does not alter the

> plaintiff's ability to demonstrate causation . . . through temporal proximity." *Id.* at 845.

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015).

## B. Analysis

As detailed above, Plaintiff has offered particularized facts to allege that he raised numerous complaints about his compensation with his immediate management, then escalated his complaints regarding his compensation to the business partner in charge of human resources, and that he was fired approximately two weeks later. *See* Am. Compl., ECF 16, ¶¶ 30–46, 48–50, 51–52, 56–57, 60. As set forth above, Plaintiff contends that he began making complaints about his compensation regarding the water cooler servicing assignments in or about March 2023. *Id.* ¶¶ 30–31, 33. He alleges that in response to these complaints, he was threatened with termination if he did not complete the servicing assignments. *See id.* ¶¶ 34–36. After Plaintiff escalated the issue to a human resources representative, Brooke Semenza, on October 4, 2023, Plaintiff met with his supervisors on October 30, 2023, and received "shallow assurances" that the issue would be "rectified." *Id.* ¶¶ 48–52, 53. Approximately two weeks later, Plaintiff was terminated, purportedly in connection with repeated infractions related to phone use inside a company vehicle. *See id.* ¶¶ 56–57. Defendants contend that Plaintiff's complaints centered on his job assignments, and because "the FLSA does not require employers to assign certain duties to some employees over others" or "prohibit them from having different compensation structures," Plaintiff's complaints were not protected activity under the FLSA. Defs. Mem., ECF 25, at 10. At this stage of the proceedings, however, the Court must draw all reasonable inferences in Plaintiff's favor. Plaintiff has alleged specific factual detail to conclude that he made multiple complaints about his compensation and Defendants' failure to pay him fairly given his

additional job responsibilities that caused him to work longer hours — in context, Plaintiff has alleged sufficient facts from which to conclude that a reasonable employer should have understood his complaints, "in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14.

Accordingly, the Court recommends denying Defendants' motion to dismiss the FLSA and NYLL retaliation claims.

## IV. Individual Defendant Liability

On the question of whether Plaintiff has adequately alleged that his supervisors, Defendants Edwards and Bernard, are liable under the FLSA and the NYLL, Plaintiff asserts that both of them "were responsible for hiring and firing employees, setting compensation, delegating assignments to [Plaintiff], and maintaining employee records and other business records." Am. Compl., ECF 16, ¶ 18. As set forth above, the amended complaint also alleges that Defendant Edwards provided Plaintiff direction concerning his work, *id.* ¶¶ 16, 18, and that Edwards threatened to fire Plaintiff, disciplined him, and ultimately was involved in his firing, *id.* ¶¶ 33–36, 44–50, 56–57. Given the detailed interactions with Defendant Edwards alleged in the amended complaint, Plaintiff has proffered sufficient detailed facts from which to infer that Edwards's responsibilities satisfy at least two of the *Carter* factors: Plaintiff adequately alleges that Edwards had the "power to hire and fire the employees" and that he "supervised and controlled employee work schedules [and] conditions of employment." *Carter*, 735 F.2d at 12. It is also clearly and specifically alleged that Edwards's role and responsibilities "directly affect[ed] the nature or conditions" of Plaintiff's employment. *Castimatidis*, 722 F.3d at 110.

22

With respect to Defendant Bernard, however, the specific, factual allegations are much more sparse. Other than one interaction concerning Plaintiff's complaints about his compensation, the amended complaint does not detail much regarding Bernard's role at the company other than that he is the branch manager with supervisory authority over the warehouse. Am. Compl., ECF 16, ¶¶ 13, 17; *see also id.* ¶ 54 (alleging that Bernard provided Plaintiff with "shallow assurances" that his pay issue concerning the water cooler servicing would be rectified, but that Bernard "made it clear that Mr. Jean-Louis would *not* be receiving any retroactive commissions nor overtime wages" (emphasis in original)). Although the amended complaint does further allege that Bernard had the power to hire and fire, set compensation, and keep and maintain employee and business records, *id.* ¶ 18, these allegations are "wholly conclusory and merely parrot the *Carter* factors." *Lin*, 2018 WL 4403384, at *4. Moreover, Plaintiff has not shown, with particularized facts, that Defendant Bernard directly affected the nature or conditions of employment as contemplated by *Castimatidis. See* 722 F.3d at 110. As conclusory allegations are insufficient to state a claim, the Court respectfully recommends dismissing the claims against Defendant Bernard. *See Iqbal*, 556 U.S. at 678.

## V.  NYLL Spread of Hours Claim

Under the NYLL spread-of-hours provision, employees who make minimum wage or less are entitled to an additional hour of pay at the prevailing minimum wage for every day they work more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("An employee shall receive one [additional] hour's pay at the basic minimum hourly wage rate . . . for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."). "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 45

23

(E.D.N.Y. 2015); *see also Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 294 (E.D.N.Y. 2024) (finding that the plaintiffs were entitled to spread-of-hours pay for the period in which they were paid less than minimum wage); *Guadalupe v. Tri-State Emp., Mgmt. & Consulting, Inc.*, No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (deferring to the New York Department of Labor's interpretation that spread-of-hours pay is not available to employees whose compensation exceeds minimum wage).

Here, Plaintiff's complaint includes no allegations regarding his salary or hourly rate and he does not allege that he was a minimum wage employee. *See generally* Am. Compl., ECF 16. Accordingly, Defendants maintain that Plaintiff's spread of hours claim should be dismissed for failure to state a claim. Defs. Mem., ECF 25, at 14–15. Plaintiff's brief in opposition does not respond to Defendants' arguments as to this cause of action. *See generally* Pl. Opp'n, ECF 26. Given Plaintiff's failure to allege sufficient facts to allege this claim and failure to address the relevant argument in response to the motion to dismiss, the Court deems this claim abandoned and recommends that it be dismissed. *See Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 343 (S.D.N.Y. 2018); *see also Div. 1181 Amalgamated Transit Union v. R&C Transit, Inc.*, No. 16-CV-2481 (ADS) (ARL), 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (collecting cases).

### CONCLUSION

For the reasons discussed herein, the Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part. Specifically, the Court recommends that the motion to dismiss should be granted as to Plaintiff's spread-of-hours claim under the NYLL (claim four) but denied as to Plaintiff's overtime claims and retaliation claims (claims one, two, three, and five). The motion to dismiss the

Individual Defendants should be granted as to Defendant Bernard, but denied as to Defendant Edwards. Additionally, the Court recommends granting Plaintiff's request for leave to file an amended complaint. *See* Pl. Opp'n, ECF 26, at 1–2 (citing *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013)).[5]

\* \* \* \* \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation]

---

[5] The Court recommends granting leave to amend under the liberal standard of Federal Rule of Civil Procedure 15(a)(2), under which leave to amend is to be granted freely. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (observing that "the court should grant such leave 'freely . . . when justice so requires' pursuant to Rule 15(a)(2)" and that this is a "liberal and permissive standard" (cleaned up)). As set forth above, the Court concludes that Plaintiff has stated sufficient facts to allege a violation of the FLSA and the NYLL as to some, but not all of the originally named Defendants, and Plaintiff has "not yet had an opportunity to amend in response to a Court order pointing out the deficiencies" in his pleading. *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. 2019).

25

operates as a waiver of any further judicial review of the magistrate[ judge's] decision"

(quotation marks omitted)).

      **SO ORDERED.**

Dated:  Brooklyn, New York
         January 16, 2026

                               *Taryn A. Merkl*
                               TARYN A. MERKL
                               UNITED STATES MAGISTRATE JUDGE